UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN LYNCH AND ) | |
| LILLIAN LYNCH ) | No. 3:16-CV-01265-JAM |
|       Plaintiffs, ) | |
| ) | |
| V. ) | |
| ) | |
| METROPOLITAN PROPERTY AND ) | |
| CASUALTY INSURANCE COMPANY ) | |
|       Defendant. ) | SEPTEMBER 20, 2017 |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Plaintiffs, JOHN LYNCH and LILLIAN LYNCH ("Plaintiffs"), and submit the following Memorandum of Law in Opposition to the Defendant's, METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY ("Defendant"), Motion to for Summary Judgment dated July 31, 2017.

**RELEVANT FACTS**

Plaintiffs filed a three count complaint dated June 22, 2016 in the Superior Court for the State of Connecticut against Defendant regarding coverage issues for damage to concrete in their basement. Count One alleges a claim for a Breach of Contract. Count Two alleges a Breach of Duty of Good Faith and Fair Dealing. Count Three alleges breaches of the Connecticut Unfair Trade Practices Act and the Connecticut Unfair Insurance Practices Act. See Plaintiffs' Statement, ¶ 1.

Plaintiffs owned 46 Laurel Drive, Willington, Connecticut. Id, at ¶ 3. Defendant provided homeowner's insurance coverage to the Plaintiffs for said property. See id, at ¶ 7. Said policy provides, in relevant part, under "Section I – Additional Coverages... 3.

Reasonable Repairs. We will pay the reasonable expenses you incur for the necessary immediate and temporary repairs to protect covered property from further loss following a loss we cover." See id, at ¶ 26.

The policy further provides:

"SECTION I – ADDITIONAL COVERAGES

16. Collapse. We will pay for sudden and accidental direct physical loss to covered property involving the entire collapse of a building or any part of a building caused only by one or more of the following:

A.  perils described in SECTION I – BROAD NAMED PERILS;
B.  hidden decay of the structure;
C.  hidden insect or hidden vermin damage;
D.  weight of contents, equipment, animals or people;
E.  weight of ice, snow, sleet or rain which collects on a roof; or
F.  use of defective material or methods in construction, remodeling or renovations if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patios, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, septic field, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items B., C., D., E., and F. unless the loss is a direct result of the collapse of a building.

Collapse means an abrupt falling down or caving in of a building or any part of a building. Collapse does not include settling, cracking, sagging, bowing, bending, leaning, shrinking, bulging or expansion. A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

This coverage does not increase the limit of liability applying to the damaged covered property.

The policy deductible does apply to this coverage.

The deductible does apply to this coverage.

The deductible will not apply to Section I – Additional Coverages, except where specified in the Additional Coverage.

Please refer to the HA01CT edition date 07/12 endorsement which changes 16. Collapse to:

    4.    Under SECTION I – ADDITIONAL COVERAGES, COLLAPSE:

A.     item F. is deleted and replaced by:

    F.     use of defective material or methods in construction, or renovation.

B.     the third paragraph is deleted and replaced by; Collapse does not include settling, cracking, shrinking, bulging or expansion.

Id, ¶ 10.

Further, the policy provides "COVERAGE A – DWELLING AND COVERAGE B – PRIVATE STRUCTURES  We will pay for sudden and accidental direct physical loss or damage to the property described in Coverages A and B, except as excluded in SECTION 1 – LOSSES WE DO NOT COVER.. See id, ¶ 8.

The policy further notes:

"SECTION I – LOSSES WE DO NOT COVER
(SPECIAL PERILS)

2.     We do not insure under Coverage A and Coverage B for any loss consisting of one or more of the items below.  However, we pay of any ensuing loss unless the ensuing loss itself excluded by any other provision in this policy.  Further, we do not insure for loss described in Exclusion 1.  above an Exclusions 3. and 4. below regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss.  These items are:

B.     defective, inadequate, faulty or unsound;

1.     planning, zoning, development, surveying, siting;

2.     design, specifications, workmanship, repair, construction,   renovation, remodeling, grading, compaction;

3.     materials used in repair, construction, renovation or remodeling; or

4.     maintenance; of any property whether on or off the residence premises.  Property includes land, structures or improvements of any kind; and

    C.     weather conditions."

Id, at ¶ 9.

On or about January of 2016, Dwight Uffer inspected the Plaintiffs' property.  Mr. Uffer determined that that there was a chemical reaction in the concrete.  See id, at ¶ 14.

On or about February 8, 2016, the Plaintiffs made a claim with the Defendant.  See id, at ¶ 22.  On or about February 29, 2016, the Defendant denied coverage for the Plaintiffs claim.  See id, at ¶ 23.  Said correspondence noted all of the above policy provisions except the one allowing for reasonable repairs.  See id, at ¶ 23.  It was estimated that the cost to repair the concrete was $200,000.00 to $250,000.00.  See id, at ¶ 27.

The Plaintiffs have alleged in Count Two a Breach of Duty of Good Faith and Fair Dealing.  See id, at ¶ 1.  In Count Three, the Plaintiffs alleged that the Defendants, unreasonably and in bad faith, interpreted certain provisions of the policy to deny benefits when there existed coverage under the policy.  See id.  The Plaintiffs have also alleged that the Defendant participates in Insurance Services Office, Inc. ("ISO"), an organization that collects data regarding claims, which was not made known to the Plaintiffs.  The Plaintiffs have alleged that the Defendant was aware of numerous claims regarding issues similar to the Plaintiffs' and has similarly denied all other claims.  By failing to fairly evaluate the claims, the Plaintiffs have alleged that the Defendant has violated the Connecticut Unfair Insurance Practices Act and the Connecticut Unfair Trade Practices Act.  See id, at ¶ 1.

The Plaintiffs sold their home for $140,000.00 but had received offers of

$4000,000.00 prior to discovering the issue.  See id at ¶ 27.

**LAW AND ARGUMENT**

**1. Standard of Review**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the burden of proving that no factual issues exist. Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought. Id.  "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315-16 (2d Cir. 2006) (quotation omitted).  If the movant does satisfy this burden, then a "limited burden of production shifts to the nonmovant." Cobb v. Metro-North R. Co., 41 F.Supp.3d 145, 149 (D. Conn 2014).  "The trial court's task is to 'carefully limited to discerning whether there are any genuine issues of material fact to be tried, not deciding them.  Its duty, in short, is confined... to issue finding; it does not extend to issue resolution." Id, (citations omitted).

**2.  Plaintiffs have Stated a Sufficient Cause of Action under the Policy due to Its Failure to Exclude Losses from a Chemical Reaction**

The Plaintiffs are seeking coverage for a chemical reaction that occurred on

their property since the cracking is just a further manifestation of a "sudden and accidental direct physical loss" that is covered under the policy.

The Defendant argues that the issue took place over time and that this is not sudden and accidental.  See Defendant's Memorandum of Law, p. 8.  The subject policy: "...will pay for sudden and accidental direct physical loss or damage to the property..."  See Plaintiff's Statement, ¶ 8.  The policy then proceeds to list just over two pages of exceptions.  See Defendant's Motion for Summary Judgment, Document 14-2, p. 20-24 of 51.  None of these exclusions lists losses due to a chemical reaction.  See id.  See also Plaintiff's Statement, ¶ 1.

The Plaintiffs allege that the chemical reaction is the "sudden and accidental direct physical loss".  See id.  The Plaintiffs' expert opined that the damage was caused by a chemical reaction in the concrete.  See Plaintiff's Statement, ¶ 14.  The moment the chemical reaction occurs, the only solution is replacement of the concrete.  The policy does not specifically exclude this loss.

3. **Plaintiffs' Loss is Covered Under "Ensuing Loss" and "Reasonable Repairs"**

The cracking is the manifestation of the chemical reaction that has already occurred, which reaction is not found in the listed exclusions.  The Defendant's policy also provides for coverage of any "ensuing loss" suffered by the Plaintiffs.  See id, ¶ 9.  The policy further provides for any reasonable repairs that need to be made to the property.  See id, ¶ 26.  Whether the walls crack, bow, fall down, or mysteriously disappear into thin air, these still do not mean a physical loss did not occur due to a

chemical reaction that happened within.  The replacement of the concrete to remedy this condition is covered based on the policy provisions of "ensuing loss" and "reasonable repairs" for the chemical reaction which is not excluded under the policy. In fact, the estimate for repairs was $200,000.00 to $250,000.00.  See id, ¶ 27.

**4.  Plaintiffs have a Viable Claim for Collapse**

The chemical reaction cannot be seen by observation but manifests itself only later with the cracking.  Mr. Uffer notes a chemical reaction upon boring and testing of the concrete.  See id, ¶ 14.

The "collapse" aspect of the Plaintiffs' Complaint is an ostentatious manifestation of this chemical reaction.  The degree of this manifestation, whether the reaction is occurring and is not visible, or if the concrete has crumbled resulting in the entire structure imploding, really has nothing to do with the physical loss that is already occurring.  The "collapse" is a further result of the chemical reaction.

In this case, the Plaintiffs argue that the walls are cracking, giving way and essentially caving in, and as such, the damages and losses should be covered under the Defendant's policy.  See  Malbco Holding, LLC v. Amco Ins. Co., 629 F. Supp. 2d 1185, 1195 (D. Or. 2009) (definition of collapse only defines term, while the remaining portions clarify instances when collapse has not occurred).  The term collapse is ambiguous in light of the qualifiers made by the provisions in the policy.  Compare Dalton v. Harleysville Worcester Mutual, 557 F. 3d, 88, 93 (2nd Cir 2009) (policy found to be ambiguous because it covers "collapse" due to hidden decay, which is a slow

occurring condition).  Any ambiguities in an insurance contract are construed in favor of the insured.  See Lexington Ins. Co. v. Lexington Healthcare Group, Inc., 309 Conn. 1, 9-10 (2013).

The term "caving in" on the policy also connotes that there is coverage under the Defendant's policy.  Compare Gulino v. Economy Fire and Casualty Company, 971 N.E.2d 522, 527-28 (Ill. App. Ct. 2012) (term "caving in" found under "abrupt collapse" does not necessarily limit coverage to a complete falling down).   The Plaintiffs further argue that the structural integrity of the building certainly is in a state of collapse, regardless of whether the Plaintiffs can still live there or not, and coverage is warranted.  130 Slade Condo Association Inc. v. Millers Capital Insurance Company, Civil Action No. CCB-07-177(D. Md. 2008) (Court found any serious impairment of the structural integrity of the building is covered, in this case, the structure had buckled three inches).  As such, since the structural integrity of the home is clearly in jeopardy, the collapse provision provides coverage to the Plaintiffs.

**5.  Plaintiffs have Stated a Sufficient Cause of Action for a Breach of Good Faith and Fair Dealing**

The Plaintiffs have made a sufficient claim under Count Two for a Breach of Good Faith and Fair Dealing:

> "It is axiomatic that the duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship... In other words, every contract carries and implied duty requiring that neither party do anything that that will injure the right of the other to receive benefits of the agreement... The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contact term... To constitute a

> breach of the implied covenant of good faith and fair dealing, the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive benefits that he or she reasonably expected to receive under the contact must have been taken in bad faith."

Kowalchuk v. Travelers, No. CV 11 6012608 (Conn. Super. Ct., June 4, 2014) (Shortall, JTR) ("Kowalchuk") quoting Renaissance Management Co. v. Connecticut Housing Finance Authority, 281 Conn. 227, 240) (2007).  "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive... Bad faith means more than mere negligence, it involves a dishonest purpose." Gabriel v.. Liberty Mutual Fire Insurance Company, 3:14 cv 01435 (VAB) (September 28, 2015) quoting Warner v. Konover, 553 A.2d 1138, 1140 (Conn. 1989).

    Plaintiffs have alleged that there existed coverage for the chemical reaction that occurred in the concrete.  See Plaintiffs' Statement, ¶ 1.  Further, Plaintiffs have alleged that despite this coverage, Defendant denied the claim and relied on interpretations of provisions contrary to the coverage provisions.  See id.  Finally, Plaintiffs have alleged that they expected to receive benefits, yet Defendant, unreasonably and in bad faith, sought out other policy provisions and interpreted them in a manner for the purpose of denying benefits when provisions existed conferring benefits.  See id.  Plaintiffs, therefore, have made a sufficient claim under Count Two. Compare Gabriel, supra, ("Read in a light most favorable to the Gabriels, these allegations state a claim for breach of implied covenant of good faith and fair dealing

because they give rise to a plausible inference that Liberty Mutual acted to mislead the Gabriels, or neglected to fulfill a duty to provide coverage out of a self-interested motive").

The Plaintiffs argue that there exists coverage under the policy, specifically that chemical reactions are NOT excluded from coverage.  Defendant, in bad faith, and for the sole purpose of not providing coverage, purposely ignored applicable provisions for coverage (or, as in the case of the chemical reaction, something NOT specifically excluded) while it delved into a lengthy, confusing, and cumbersome policy to search out any excuse NOT to cover Plaintiffs.  Certainly, when a homeowner experiences a natural disaster, such as a chemical reaction occurring in his or her basement, a homeowner expects that the insurance company he or she faithfully paid premiums to would employ provisions within the policy to find coverage, not go out of its way to exclude coverage.

### 6. Plaintiffs have Stated a Sufficient Claim Under CUIPA and CUTPA.

The Plaintiffs have made a sufficient claim under CUIPA and CUTPA in Count Three.

> "A plaintiff may assert a CUTPA claim based on a violation of CUIPA... To prevail on such a claim, the plaintiff must show that the defendant engaged in an act prohibited by CUIPA and the act proximately caused the plaintiff's harm... 'A Claim of unfair settlement practice under CUIPA/CUTPA requires the plaintiff to allege that the defendant has committed the alleged proscribed act with sufficient frequency to indicate a general business practice... The plaintiff must show more than a single act of insurance misconduct...'"

Gabriel, supra, citations omitted.

> "Connecticut courts, when determining whether a practice violates CUPTA, will consider (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statues, the common law, or otherwise--- whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers..."

Kowalchuk, supra, quoting Ancona v. Manafort Bros., Inc., 56 Conn. App. 701, 714 (2000).  "All three criteria do not need to be satisfied to support a finding of a violation of CUTPA."  Id, quoting Hartford Electric Supply Co. v. Allen-Bradley Co., 250 Conn. 334, 367-368 (1999).  "CUPTA is remedial in character... and must be liberally construed in favor of those whom the legislature intended to benefit."  Id, quoting Service Road Corp. v. Quinn, 241 Conn. 630, 637 (1997).

Plaintiffs' claim concerning the Defendant's association with ISO have been the subject of other Complaints.  Compare Danny Panciera v. Kemper Independence Insurance Company, 3:13-cv-1009 (Arterton, J.) (April 29, 2014) ("...Plaintiffs have alleged the existence of an organization in which Defendant is a participant whose main function is to harmonize policy language, interpretation and application.  Based on Defendant's participation in that organization, and based on the conduct of other ISO participants in denying similar claims, Plaintiffs plausibly allege that Defendant followed an industry-wide practice in denying their claim and that additional similar claims from the geographic area served by the J.J. Mottes Company likely had been submitted to and denied by Defendant consistent with this practice").  See also Gabriel, supra ("…the Gabriels alleges that Liberty Mutual and related entities have denied coverage in at least four other cases involving similar facts and identical policy

language").

Defendant in this case is aware of at least three other matters besides this one where it is subject to similar complaints with similar allegations.  See Lackouskas v. Metropolitan Property and Casualty Insurance Company 3:16-cv-01266 (RNC);  Sanzo v. Metropolitan Property and Casualty Insurance Company TTD CV 16 6010488 S; Rogers v. Metropolitan Property and Casualty Insurance Company TTD CV 16 6010764 S.  This is more than sufficient to show consistent unfair conduct by Defendant in this case.  Compare Kowalchuk, supra ("The court finds Mr. Kowalchuk's CUTPA claim is legally sufficient because he has alleged unfair misconduct by Travelers against multiple insureds").  Plaintiff has demonstrated the existence of these multiple claims which allows for an unfair practices claim.

**Conclusion**

For all of the above mentioned reasons, Plaintiffs respectfully object to Defendant's Motion for Summary Judgment dated July 31, 2017.

PLAINTIFFS
JOHN LYNCH and LILLIAN LYNCH

By /s/ Brian D. Danforth
   Brian D. Danforth (ct19476)
   Tolisano & Danforth, LLC
   P.O. Box 676
   Ellington, CT 06029
   (860) 871-2422
   (860) 871-2828 (fax)
   bdanforth@tanddlaw.com

### CERTIFICATION

This is to certify that on September 20, 2017 a copy of the foregoing Motion in Opposition was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be send by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Allison Russo, Esq.
O'Connell, Attmore & Morris, LLC
280 Trumbull Street, 23rd Floor
Hartford, CT 06103
Telephone: (860) 548-1300
Facsimile: (860) 548-0023
E-mail: arusso@oamlaw.com

   /s/  Brian D. Danforth
   Brian D. Danforth